# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1237V

| | |
|---|---|
| JEAN STRONE, | TO BE PUBLISHED |
| Petitioner, | Special Master Katherine E. Oler |
| v. | Filed: January 9, 2020 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' Fees & Costs; Reasonable Basis; Influenza vaccine; Miller-Fisher syndrome; Guillain-Barré syndrome. |
| Respondent. | |

*Mark T. Sadaka*, Sadaka Associates LLC, Englewood, NJ, for Petitioner.
*Heather L. Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION ON MOTION FOR FINAL ATTORNEYS' FEES AND COSTS[1]

On August 17, 2018, Jean Strone ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that she suffered from the Miller-Fisher variant of Guillain-Barré syndrome ("GBS") as a result of the influenza ("flu") vaccination she received on September 29, 2015. Pet. at 1, ECF No. 1.

Petitioner filed a motion for a decision dismissing her claim on April 14, 2019. ECF No. 18. I granted her motion and issued a dismissal decision on April 18, 2019. ECF No. 19. A joint

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

notice not to seek review was filed on April 19, 2019 (ECF No. 20) and judgment entered that same day (ECF No. 21).

On May 31, 2019, Petitioner filed an application for attorneys' fees and costs requesting a total of $17,870.14. Fees App., ECF No. 24.  Respondent submitted his response in opposition to Petitioner's motion on June 14, 2019. Fees Resp., ECF No. 25.  Petitioner filed a reply on June 21, 2019. Fees Reply, ECF No. 26.

For the reasons set forth below, I find that Petitioner did not have a reasonable basis to file the petition.  Therefore, her motion for attorneys' fees and costs is denied.

I.      **Relevant Medical History**

Petitioner received a flu vaccination on September 29, 2015, at the age of 59.  Ex. 11 at 17.

Approximately one week later, on October 7, 2015, Petitioner had a follow-up appointment for her hypothyroidism with Dr. Chandra, her endocrinologist.  Ex. 10 at 4.  She reported severe fatigue and significant weight gain in the two years prior.  Dr. Chandra prescribed Petitioner Synthroid and instructed Petitioner to eat fewer carbohydrates and exercise more in order to lose weight.  *Id.* at 6.

On December 10, 2015, Petitioner had a well woman exam with Dr. Russo.  The physical exam was normal and her review of systems was negative.  Ex. 3 at 1-2. Among other negative notations, the record indicates that Petitioner was negative for dizziness and headaches.  *Id.* at 2.

Petitioner met with Dr. Lentine on January 5, 2016, complaining that two days prior, on Sunday, she began experiencing symptoms of blurred vision, tearing, itchy, swollen eye, sore throat, mild cough, nasal congestion, and achiness.  Ex. 7 at 139.  Under the neurological portion of the exam, Dr. Lentine noted "[a]lert and oriented. No major deficits of coordination or sensation."  *Id.*  In the musculoskeletal portion of the exam, Dr. Lentine notes "no major bone, joint, tendon, or muscle changes."  *Id.*  Petitioner was diagnosed with "[a]cute pharyngitis," "[p]roductive cough," and "[c]onjunctivitis."  *Id.*

The next day, on January 6, 2016, Petitioner returned to Dr. Chandra.  Ex. 10 at 1.  It was noted that Petitioner's "energy [was] better;" she had "lost 10 lbs in the past 3 m[on]ths;" she had "reduced carbs [and] exercising more."  *Id.*  The physical exam was mostly normal with the neurologic portion being noted as "[g]rossly nonfocal, alert and oriented."  *Id*. at 2.  The "review of systems" was also normal.  *Id.*  Specifically, Petitioner was noted to have no headache and no dizziness.  *Id.*

Petitioner saw her allergist, Dr. Weiss, on January 8, 2016 complaining of a sinus infection.  Ex. 11 at 14.  A neurological review revealed "[n]o headaches[3], paresthesias, confusion, dysarthria

---

[3] While both the allergy review of systems and the general review of systems indicate "no headache" the section entitled "follow up progress note" states, "Sick contacts at home.  I suspect I have a sinus infection. Notes a cough, and nasal congestion.  Headache…" Ex. 11 at 14.

2

or gait instability." *Id*. Dr. Weiss diagnosed Petitioner with acute sinusitis and prescribed antibiotics and Flonase. *Id*. at 15.

On January 15, 2016, Petitioner returned to Dr. Weiss with a complaint of dry cough and a lack of improvement. Ex. 11 at 11. Her "eyes [were] all red and swollen," noted "mucus with nose blowing," and reported a "[s]light fever yesterday." *Id*. Again, a neurological and musculoskeletal review was normal. *Id*. The diagnosis remained acute sinusitis and Petitioner was instructed to taper off prednisone. *Id*. at 12.

Petitioner returned to Dr. Lentine on January 20, 2016 for "numbness and tingling in hands and feet," and also complained of being "tired," having "brain fog," being "dizzy," and having "nasal congestion" and a "cough at night." Ex. 7 at 146. It was noted that Petitioner had seen her allergist "a week ago." *Id*. Dr. Lentine's assessment included "[f]atigue," "[t]ingling sensation in fingers or toes," "[v]ertigo or dizziness," and "[s]inusitis." *Id*. at 147.

On January 21, 2016, Petitioner went to the emergency room at Chilton Hospital with a chief complaint of "numbness in arms and legs, dizzy, weak." Ex. 6 at 88. She reported that onset of her sinus congestion was "2 weeks ago." *Id*. at 90. Petitioner also reported that she had an allergic reaction to cefuroxime resulting in "nasal irritation, itchiness, and swelling." *Id*. She denied "chills, fever, malaise, [and] weakness." *Id*. at 91. The assessment was pansinusitis.[4] *Id*. at 97. Petitioner was admitted to the hospital for intravenous antibiotics. *Id*.

The following day, January 22, 2016, Petitioner met with a neurologist, Dr. Chodosh, and reported that "she developed symptoms of sinus infection in the beginning of January," and that "for the last 3 days she has noted numbness of both hands and feet." Ex. 16 at 8. Dr. Chodosh noted that "[t]his seemed to worsen over the course of several days, but today it is better than it was yesterday." *Id*. Petitioner indicated that "[s]he [was] unaware of any weakness or incoordination though she does feel somewhat unsteady on her feet" and "slightly vertiginous." *Id*. She "denie[d] having had any sensory symptoms previously." *Id*. Dr. Chodosh's neurology progress note states that Petitioner "has the new onset of numbness in her hands or feet." Ex. 6 at 83. On January 23, 2016, Dr. Chodosh again indicates that "the patient has the new onset of numbness of her hands and feet over the last several days." Ex. 6 at 82.

Petitioner also had a consultation with Dr. Filippis on January 22, 2016, during which she reported she had "been ill for about 3 weeks with an illness she describes as sinus congestion and sinus infection." Ex. 16 at 11. It was noted that Petitioner "came to the emergency room now actually, because she is beginning to feel numbness in her hands and her feet and was begun on Levaquin in the emergency room and admitted to the hospital for further care after a CT scan showed a pansinusitis." *Id*.

During a neurosurgical consultation with Dr. Raab on January 25, 2016, it was noted that Petitioner had an upper respiratory infection for approximately one week and "[n]ow presents with [bilateral] [upper and lower extremity] tingling" as well as "perioral tingling." Ex. 1 at 2. Dr. Raab's impression was "acute onset" paresthesias. *Id*. at 4.

---

[4] Pansinusitis is "inflammation involving all of the paranasal sinuses on one side." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (32nd ed. 2012) at 1370.

3

On January 31, 2016, Petitioner was discharged from Chilton Hospital. Among her final diagnoses were "[a]typical Guillain-Barr[é] syndrome." Ex. 6 at 23. She was treated with gammaglobulin and "clinically improved." *Id.*

On February 10, 2016, Petitioner presented to Kessler Rehabilitation Center. The history of injury section states, "Pt reports being admitted to hospital on 1/21 until 1/31. … Pt reports waking up with all extremities tingling and weak. Pt reports noticing weakness opening water bottles starting a few weeks before that." Ex. 15 at 230.

## II.     Procedural History

The petition was filed on August 17, 2018. Pet., ECF No. 1. This case was assigned to my docket on August 20, 2018 and I issued an initial order on that day. ECF No. 5. Petitioner filed several medical records, along with a statement of completion on September 12, 2018. ECF Nos. 6-9.

On February 12, 2019, Respondent filed a motion for an order to show cause. ECF No. 11.

On February 25, 2019, Petitioner field three affidavits in support of her petition, including one from herself, Robert Dotto and Kim Fojut. Exs. 18-20. That same day, Petitioner filed her response to Respondent's motion for an order to show cause. ECF No. 15.

On March 12, 2019, I held a status conference with the parties to offer my initial views on the evidence that had been submitted. During this status conference "Petitioner's counsel confirmed that the affidavits conflict with the medical records and was unable to identify any contemporaneously-created notations in the medical records that support the onset timeframe alleged in Petitioner's affidavits." 3/14/19 Order, ECF No. 16. I informed Petitioner's counsel that after my review of the medical records, I questioned reasonable basis. *Id.* Following the status conference, Petitioner was given an opportunity to indicate how she wished to proceed. *See* 3/14/19 Order, ECF No. 16. Petitioner filed a status report on April 10, 2019, indicating her intention to dismiss her claim. ECF No. 17. On April 16, 2019, Petitioner moved for a decision dismissing the petition. ECF No. 18.

On April 18, 2019, I issued a decision dismissing Petitioner's claim. ECF No. 19. A joint notice not to seek review was filed on April 19, 2019. ECF No. 20. Judgment entered that same day. ECF No. 21.

On May 31, 2019, Petitioner filed a motion for attorneys' fees and costs (ECF No. 24) and Respondent filed his opposition on June 14, 2019 (ECF No. 25). Petitioner filed a reply on June 21, 2019. ECF No. 26. This matter is now ripe for a determination.

## III.    Parties' Arguments

In his response to Petitioner's motion for attorneys' fees and costs, Respondent argues that the petition lacked reasonable basis. Respondent states that the medical records filed by Petitioner

4

consistently place onset of GBS-related symptoms in mid-January 2016. Respondent argues that such a delay following Petitioner's influenza vaccination is well beyond the medically-appropriate timeframe for Petitioner's alleged injury. Because no objective evidence or medical opinion linked the September vaccination to Petitioner's resulting GBS diagnosis, Respondent states Petitioner lacked reasonable basis to file her petition.

Petitioner states that although the medical records detail Petitioner's symptoms as starting in January, the affidavits filed by Petitioner and two others describe Petitioner's symptoms in the months following her vaccination. Petitioner argues that even if the evidence is not enough to meet Petitioner's burden to establish causation, the affidavits should suffice to confer reasonable basis.

### IV. Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

#### A. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

#### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id. at 286*. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290. *See also Turpin v. Sec'y Health & Human Servs.*, No. 99-

564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Human Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

V.   **Discussion**

A.  **Good Faith**

Petitioner is entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has not raised an issue with respect to good faith in this matter. *See* Fees Resp. Based on my own review of the case, I find that Petitioner acted in good faith when filing this petition.

6

### B. Reasonable Basis for the Claims in the Petition

The reasonable basis standard is objective and requires Petitioner to submit evidence in support of the petition. The petition in this case alleges that Petitioner developed the Miller-Fisher variant of GBS shortly after her September 29, 2015 flu vaccine. Pet. at 1. As discussed in further detail below, I do not find these claims articulated in the petition to be supported by objective evidence.

#### 1. Petitioner has not Presented Evidence of Causation

The special master's analysis of reasonable basis should center around "an objective evaluation of the relevant medical information that served as the basis for petitioner's claim." *Frantz v. Sec'y of Health & Human Servs.*, No. 13-158V, 2019 WL 6974431 (Fed. Cl. 2019) (denying motion for review). An examination of the relevant medical information demonstrates that Petitioner has not presented evidence (medical records or medical opinion) that the flu vaccine Petitioner received on September 29, 2015 caused her to develop the Miller-Fisher variant of GBS.

As an initial matter, none of Petitioner's treating physicians linked the flu vaccination to her illness. That vaccination was not discussed in her medical records and was not listed as a differential diagnosis/cause. Instead, the medical records consistently indicate that Petitioner had an upper respiratory infection (URI) or a sinus infection and then developed numbness and tingling that was later diagnosed as GBS. Ex. 1 at 2; Ex. 2 at 3; Ex. 6 at 2, 16, 23, 83-85 (specifically noting "paresthesias of the feet and hands in the setting of a sinus infection which has been present for several days"); Ex. 6 at 97; Ex. 7 at 14; Ex. 13 at 13; Ex. 16.1 at 8, 11, 21, 173; Ex. 16.2 at 1100.

In addition to the absence of medical record support for vaccine causation, Petitioner did not file an expert report articulating a link between her vaccination in September 2015 and subsequent development of the Miller-Fisher variant of GBS in January 2016. Because she has not submitted medical records or medical opinion (either from treating physicians or from an expert) that links her illness to her vaccination, Petitioner did not have a reasonable basis to file her claim.

#### 2. Statements in the Petition and Affidavits not Supported by the Record do not Establish Reasonable Basis

In her Fees Reply, Petitioner asserts that "[t]here was a reasonable basis to bring this claim based on the sworn affidavits of three individuals who had firsthand knowledge of petitioner's health during the time period in question." Fees Reply at 4.

The affidavit filed by Petitioner indicates that her symptoms began in the second week of October, 2015. She states:

Around the second week of October 2015, I started to feel run down. I had frequent

7

> headaches,[5] was sore all over, had weakness in my legs and arms and at times I would feel unsteady on my feet, sort of like my balance was compromised.[6] … The feeling progressed to the point that I was no longer able to participate in many of the activities I regularly enjoyed doing and found myself limiting my activities based upon my feelings of fatigue, weakness and loss of balance.

Ex. 18 at 1-2. Petitioner continued to describe the progression of her symptoms. "During the month of December, I continued to suffer from fatigue, balance issues, headaches, sore throats, nasal congestion, difficulty speaking, blurred vision at times, and weakness in my arms and legs. I also started to notice difficulty with simple items like opening water bottles and jars." *Id.* at 3.

The affidavits filed by Petitioner's son and daughter state that in the second week of October 2015, Petitioner began to feel run down and that she experienced headaches and soreness." Ex. 19 at 1; Ex. 20 at 1.[7]

When "the medical and other written records contradict the claims brought forth in the petition," a special master is not arbitrary in concluding that reasonable basis for the petition did not exist. *Murphy v. Sec'y of Health & Human Servs.,* 30 Fed. Cl. 60, 62 (1993), *aff'd without opinion*, 48 F.3d 1236 (Fed. Cir. 1995). The documentary evidence filed in this case does not support the claims articulated in the petition or in the affidavits. Nowhere in her medical records is there documentation that Petitioner mentioned that she was experiencing symptoms of headaches, weakness, and unsteadiness in the October/November/December timeframe.

Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Nothing in the medical records substantiates Petitioner's assertions. To the contrary, during a medical visit on January 21, 2016, the record states that Petitioner "denies having had any sensory symptoms previously." Ex. 6 at 84. Indeed, all the medical records filed indicate that onset of Petitioner's symptoms of GBS began in January 2016.

### 3. Onset of Symptoms 16 Weeks after Vaccination is not Medically-Appropriate and Does Not Support Filing the Petition

Under 42 C.F.R. § 100.3(c)(15)(i), in order to satisfy the table requirement for GBS,

---

[5] The contemporaneous medical records do not support this statement. On December 10, 2015, Petitioner was reported as having no headache. Ex. 3 at 2. On January 6, 2016, she was again noted to have no headache. Ex. 10 at 2.

[6] The medical records do not support unsteadiness or balance issues. *See* Ex. 3 at 2 (record from December 10, 2015 noting no dizziness); Ex. 7 at 39 (record from January 5,2016 noting "no major deficits of coordination"; Ex. 10 at 2 (record from January 6, 2016 noting no dizziness); Ex. 11 at 4 (record from January 8, 2016 noting no gait instability).

[7] Even if these affidavits were corroborated by the medical records, they would not establish reasonable basis for filing the petition. The fact that Petitioner felt run down, and that she experienced headaches and soreness, without more, is not evidence of vaccine causation.

8

vaccination to onset of symptoms must occur within three to 42 days. *See Finch v. Sec'y of Health & Human Servs.*, No. 17-675V, 2018 WL 818265, at *1 (Fed. Cl. Spec. Mstr. Jan. 19, 2018). Petitioner's symptoms began approximately 16 weeks, (112 days)[8] after flu vaccination, and clearly fall outside of the table. In non-table GBS claims, Special Masters have not awarded compensation when onset occurs more than two months after vaccination because it is not medically plausible for the immune response to take this long. *See, e.g., Kampii v. Sec'y of Health & Human Servs.*, No. 15-1013V, 2019 WL 5483161, at *10-11 (Fed. Cl. Spec. Mstr. Jul. 24, 2019) (noting that onset of GBS 15 weeks and five days after flu vaccination is too long to be medically feasible); *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (noting that eight weeks is the longest reasonable timeframe for a flu/GBS injury); *De La Cruz v. Sec'y of Health & Human Servs.,* No. 17-783V, 2018 WL 945834, at *1 (Fed. Cl. Spec. Mstr. Jan. 23, 2018); *Corder v. Sec'y of Health & Human Servs.*, No. 08-228V, 2011 WL 2469736 (Fed. Cl. Spec. Mstr. May 31, 2011); *Glassberg v. Sec'y of Health & Human Servs.*, No. 07-303V, 2009 WL 4641696 (Fed. Cl. Spec. Mstr. Nov. 23, 2009).

In *Collier v. Sec'y of Health & Human Servs.*, No. 17-16V, 2018 WL 4401704, at *7-8 (Fed. Cl. Spec. Mstr. Aug. 22, 2018), I found that Petitioner had not established a reasonable basis to file his petition because no medical records or medical opinion connected Petitioner's vaccination to his injury, and further, because fourteen weeks between flu vaccine and onset of GBS was medically infeasible. Sixteen weeks is well outside a temporally-appropriate onset window. Such a temporal gap makes this claim unfeasible, especially when considered in light of the lack of medical record or medical expert support.

I recognize that Petitioner's counsel acted expeditiously and that Petitioner dismissed this case at a relatively early stage in the litigation. However, Petitioner provided no medical record evidence linking her diagnosis of GBS to her flu vaccine nor were they able to submit a medical expert opinion in support of such a causal link. As such, I find that Petitioner did not have a reasonable basis to file her petition for compensation.

## VI.  Conclusion

Based on the foregoing, Petitioner's Motion for Attorneys' Fees and Costs is **DENIED**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with this decision.[9]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[8] *See* Ex. 16 at 8 (medical record from January 21, 2016 noting numbness of hands and feet for the last three days).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.